| | | |
|---|---|---|
| **SUCCESSION OF LISA D. MUNYON** | * | **NO. 2024-CA-0095** |
| | * | |
| | | **COURT OF APPEAL** |
| | * | |
| | | **FOURTH CIRCUIT** |
| | * | |
| | | **STATE OF LOUISIANA** |

\* \* \* \* \* \* \*

APPEAL FROM
CIVIL DISTRICT COURT, ORLEANS PARISH
NO. 2022-06328, DIVISION "J"
Honorable D. Nicole Sheppard
\* \* \* \* \* \*
**Judge Paula A. Brown**
\* \* \* \* \* \*

(Court composed of Judge Paula A. Brown, Judge Tiffany Gautier Chase, Judge Dale N. Atkins)

Laurence Kevin Coleman
L. KEVIN COLEMAN, LLC
111 Chinchuba Gardens Drive
Mandeville, LA 70471

      COUNSEL FOR APPELLANT

Robert E. Tarcza
TARCZA & ASSOCIATES, L.L.C.
330 Carondelet Street, Suite 300
New Orleans, LA 70130

      COUNSEL FOR APPELLEE

                                     **VACATED AND REMANDED**
                                      **JULY 25, 2024**

*PAB*
*TGC*
*DNA*

This appeal involves a succession proceeding, wherein multiple parties claim to be the rightful heirs. Appellants, Larry and David Munyon (collectively, the "Munyons"), seek to appeal the district court's November 22, 2023 judgment, which denied the *Motion to Traverse Affidavits of Death, Domicile and Heirship* ("Motion to Traverse") and *Motion to Establish Heirship of the Munyons* filed by the Munyons, and dismissed their claims at their own cost. For the reasons that follow, we vacate the district court's judgment and remand the matter to the district court for further proceedings.

## FACTS AND PROCEDURAL HISTORY

On July 11, 2022, Lisa D. Munyon ("Decedent"), was found deceased in her home. Thereafter, on July 15, 2022, Lynn B. McLean—who attested that she knew Decedent for over thirty years—filed a *Petition to Search for Testament*, requesting that a notary be appointed to search Decedent's home for a testament[1]

---

[1] Louisiana Code of Civil Procedure Article 2854 provides:

> If the testament is not in the possession of the petitioner, he shall pray that the court direct that a search be made for the testament by a notary of the parish. In its order directing the search, the court may order any person having in his possession or under his control any books, papers, or documents of the deceased, or any bank box, safety deposit vault, or other receptacle likely to contain the

1

and that she be allowed to hire a biohazard cleanup company to clean Decedent's home before the court-appointed notary entered it to search for a testament. The district court-appointed Attorney Paul Bonin (the "court-appointed notary") to conduct the search. Following the search of Decedent's home, the court-appointed notary found an olographic will; however, the only named legatee[2] was Decedent's mother, who predeceased her.

On August 16, 2022, Appellee, Joseph Passaniti ("Mr. Passaniti"), who was Decedent's uncle, filed a *Petition for Appointment of Provisional Administrator*, wherein he alleged, among other things, that Decedent died intestate and her only intestate heirs, other than him, are her two uncles—Randy Passaniti and Anthony Passaniti. Mr. Passaniti requested that he be appointed provisional administrator of Decedent's succession to secure Decedent's home; ensure the biohazard cleanup company cleaned the home; safe-keep the assets of Decedent's succession; and pay urgent debts. Also on August 16, 2022, Mr. Passaniti and his wife each filed *Affidavits of Death, Domicile and Heirship* ("Original Affidavits"), attesting that: (1) Decedent was never married and died without descendants; (2) Decedent's mother predeceased her; (3) Decedent was adopted and her adoptive father, Carl Munyon, abandoned Decedent shortly after his divorce from Decedent's mother; (4) Decedent's estranged adoptive father predeceased her; (5) Decedent had only one brother who predeceased her; and (6) Decedent's only intestate heirs were her

---

testament of the deceased, to permit the examination of the books, papers, and documents, and of the contents of the bank box, safety deposit vault, or other receptacle, by the notary.

[2] Louisiana Civil Code Article 876 provides:

There are two kinds of successors corresponding to the two kinds of succession described in the preceding articles:
Testate successors, also called legatees.
Intestate successors, also called heirs.

three uncles—Mr. Passaniti, Randy Passaniti and Anthony Passaniti. The district court issued an order confirming Mr. Passaniti as the provisional administrator on August 17, 2022.

On July 24, 2023, the Munyons filed a Motion to Traverse, asserting that they were Decedent's adoptive brothers, through Carl Munyon. Attached to the Motion to Traverse were affidavits from the Munyons, each attesting that they were the sons of Carl Munyon, and an uncertified copy of Decedent's birth certificate, which was found by the court-appointed notary during the search of Decedent's home. This birth certificate, dated five days after Decedent's birth, listed Carl Munyon as Decedent's father. Mr. Passaniti filed an opposition to the Munyons' motion, wherein he averred that an inadmissible and uncertified birth certificate naming Carl Munyon as Decedent's father was not sufficient proof of filiation for the Munyons to be considered next of kin. Mr. Passaniti argued that he, on the other hand, provided two certified death certificates that named Wayne Lowery as Decedent's father. Mr. Passaniti further argued that the two certified death certificates serve as *prima facie* evidence that Wayne Lowery was Decedent's father. In their reply memorandum, the Munyons asserted that Mr. Passaniti was advancing his own interest, which was in conflict with his duties as the provisional administrator, because he had previously attested that Carl Munyon had adopted Decedent. The Munyons posited that the Original Affidavits filed by Mr. Passaniti and his wife serve as judicial confessions, confirming Decedent's adoption as fact. The Munyons also urged that their own affidavits serve as proof of Decedent's adoption, citing La. C.C.P. Art. 2821.[3] Finally, the Munyons argued

---

[3] Louisiana Code of Civil Procedure Article 2821 provides, in pertinent part, that "[t]he deceased's death, his marriage, and all other facts necessary to establish the relationship of his

that the provisional administrator failed in his fiduciary duty to seek out and find Decedent's rightful heirs based on the discovery of the birth certificate found in Decedent's home by the court-appointed notary.

On October 11, 2023, the matter came for hearing. Over the Munyons' objection, Mr. Passaniti—contradicting his affidavit—testified that he had no evidence of Decedent's adoption and that Decedent's father was Wayne Lowery. Specifically, Mr. Passaniti testified:

> Yes, her birth father was Wayne Lowery. I knew – him, I knew. I was – like I said, I was – when they married I was, like, eight years old. I didn't know him that well, but I knew who he was. They later got divorced. I'm not sure when. And after – a year or so after the divorce, I was told by my parents that my sister was remarried. I was mid-teens when they were married. I knew that her name was changed from Lowery to Munyon. But, as a teenager, I didn't care – it was my niece – what her last name was, she was still my niece. I didn't really care what was going on.
> And, frankly, I never even thought about adoption until my attorney asked, you know, the name change from Lowery to Munyon was she adopted. And to me it made sense that she was adopted, but – and that's why I signed the paper.

Counsel for Mr. Passaniti also noted that the two certified copies of Decedent's death certificates listed Wayne Lowery as her father.

As they did in their reply memorandum, at the hearing the Munyons argued that under La. C.C. Art. 1853,[4] the Original Affidavits should be recognized as judicial confessions of the fact that Carl Munyon adopted Decedent. The Munyons sought to offer into evidence Decedent's uncertified birth certificate, which listed Carl Munyon as Decedent's father. However, the district court sustained an

---

heirs may be evidenced either by official certificates issued by the proper public officer, or by affidavits."

[4] Louisiana Civil Code Article 1853 provides: "A judicial confession is a declaration made by a party in a judicial proceeding. That confession constitutes full proof against the party who made it. A judicial confession is indivisible and it may be revoked only on the ground of error of fact."

objection by counsel for Mr. Passaniti on the basis that an uncertified birth certificate was not admissible. The Munyons later requested three months to obtain a certified copy of Decedent's birth certificate from the State of Illinois. The district court denied this request and took the matter under advisement.

Following, on November 3, 2023, Mr. Passaniti and his wife each filed *Corrected Affidavits of Death, Domicile and Heirship* ("Corrected Affidavits"). These affidavits stated that:

> [Decedent died] at her place of domicile, on July 11, 2022; that decedent was never married. The decedent had no children, nor did she ever adopt anyone. The decedent's mother predeceased her. The decedent's stepfather, Carl Munyon, who abandoned the decedent shortly after his divorce from the decedent's mother, likely did not adopt the decedent, although she used his name. Affiant was present when decedent was born and her father was Wayne Lowery. The same man is listed as her father on the death certificates. The decedent only had one brother who predeceased her without issue. The decedent is survived by three maternal uncles, namely, Joseph Passaniti, Randy Passaniti, and Anthony Passaniti.

On November 9, 2023, despite the denial of their request for time to obtain the certified copy of the birth certificate, the Munyons filed a supplemental memorandum and attached a certified copy of Decedent's birth certificate.

The district court rendered its ruling and reasons for judgment in open court on November 14, 2023, denying the Motion to Traverse and dismissing the Munyons' claims because "the [c]ourt had not been provided any documentation as it relates to an adoption that would have occurred." The written judgment was issued on November 22, 2023. This appeal followed.

## STANDARD OF REVIEW

"Whether a person is related by blood or adoption to the decedent and therefore a legal heir is a question of fact." *Succession of Gore*, 17-68, p. 5 (La. App. 5 Cir. 5/31/17), 223 So.3d 628, 632 (citing *Succession of Gussman*, 228 So.2d 665, 668 (La. App. 3 Cir. 1974)). "In civil cases, the appropriate standard for appellate review of factual determinations is the manifest error-clearly wrong standard, which precludes the setting aside of a district court's finding of fact unless that finding is clearly wrong in light of the record reviewed in its entirety." *Succession of Fanz*, 19-0503, p. 5 (La. App. 4 Cir. 1/29/20), 364 So.3d 119, 123 (quoting *White v. Cox Operating, LLC,* 16-0901, p. 4 (La. App. 4 Cir. 4/5/17), 229 So.3d 534, 538).

## DISCUSSION

The Munyons raise four assignments of error, which we summarize as follows: (1) the district court erred in failing to find that Mr. Passaniti's attestation in his affidavit constituted a judicial confession; (2) the district court erred in allowing Mr. Passaniti to testify in contradiction to his affidavit after the Munyons detrimentally relied on his attestations; (3) the district court erred in not allowing the Munyons the opportunity to obtain and present a certified copy of Decedent's birth certificate; and (4) the district court erred in failing to find that Mr. Passaniti breached his fiduciary duty as provisional administrator by promoting his own and his brothers' claims to inheritance. Before addressing any of the Munyons' assigned errors on the merits, we must first address the assignment of error raising a procedural issue in this matter.

*Procedural Issue*

During the hearing on October 11, 2023, the Munyons attempted to offer into evidence a copy of Decedent's uncertified birth certificate. However, the

district court correctly sustained an objection lodged by counsel for Mr. Passaniti on the basis that an uncertified birth certificate was inadmissible. The Munyons then requested time to obtain a certified copy of Decedent's birth certificate from the State of Illinois in order to introduce it into the district court's record. Despite explicitly stating that the matter would "remain open and deferred" until the date of the ruling, the district court denied the Munyons' request for time to obtain Decedent's certified birth certificate due to the request being made during the post-trial period. The Munyons argue that the district court erred in denying their request for time to obtain a certified copy of Decedent's birth certificate, which, if located and presented to the court, *could* establish filiation between Decedent and Carl Munyon and place the Munyons in the priming class of heirs to take from Decedent's succession. We agree.

"Procedural rules exist for the sake of substantive law and to implement substantive rights, not as an end in themselves." *Landry v. Landry,* 53,921, p. 3, (La. App. 2 Cir. 6/9/21), 323 So.3d 456, 459 (first citing La. C.C.P. Art. 5051;[5] then citing *Unwired Telecom v. Par. of Calcasieu,* 03-0732, p. 10 (La. 1/19/05), 903 So.2d 392, 401; and then quoting *Rodgers v. Rodgers,* 50,044, p. 7 (La. App. 2 Cir. 6/10/15), 170 So.3d 382, 386). The substantive law at issue here focuses on the proper identification of the heirs to Decedent's succession. Denial of the Munyons' request for time to obtain Decedent's certified birth certificate risks a legally improper devolution of Decedent's succession. Allowing time to obtain and subsequently enter into evidence Decedent's certified birth certificate would preclude such a risk.

---

[5] The Official Revision Comment to this article provides that the "article expresses the procedural philosophy of this Code and serves as a constant reminder to the bench and bar that procedural rules are only a means to an end, and not an end in themselves."

7

"Courts of justice are always seeking the truth and when, in order to get to the truth, it becomes necessary to remand a case for further evidence, it is clearly the court's duty to do so and the law gives us that privilege and authority." *Pierce v. Thompson*, (La. App. 1 Cir. 1985), 468 So.2d 1379, 1382 (citing *Stuckey v. Hayden,* (La. App. 2 Cir. 1939), 188 So. 406, 410); *see also State, Dep't of Health & Resources, ex rel. Kendrick v. Hairr*, (La. App. 3 Cir. 9/1/89), 548 So.2d 961, 963. Moreover, this Court has held:

> When the record of a suit discloses enough to satisfy the court that the whole story of the case is not told, that essential facts have not been given in evidence, and important documents have been omitted, and that substantial justice cannot be done between the parties in the state of the record as filed here, the court will, in its discretion, in the interest of justice, remand the case.

*Everett v. Air Prods. & Chems., Inc.,* 22-0539, 0540, 0541 p. 18 (La. App. 4 Cir. 5/2/23), 382 So.3d 216, 228-29 (quoting *Smith v. Alliance Compressors,* 05-855, p. 12 (La. App. 3 Cir. 2/1/06), 922 So.2d 674, 682). The "important document" hindering a just outcome in this matter is Decedent's certified birth certificate. As such, we find that the district erred in failing to allow the Munyons to supplement the record with a certified copy of Decedent's birth certificate and remand this matter for further proceedings. Because we remand this matter to the district court, we pretermit discussion of the remaining assignments of error.

## DECREE

For the aforementioned reasons, we vacate the district court's judgment and remand the matter for further proceedings consistent with this opinion.

**VACATED AND REMANDED**